IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARY R. NORRIS,                          )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   ) CASE NO. 2:11-CV-18-WKW
                                         )            [WO]
JOHN McHUGH, SECRETARY,                  )
DEPARTMENT OF THE ARMY,                  )
                                         )
            Defendant.                   )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Mary R. Norris ("Colonel Norris") brings this action against Defendant

John McHugh, Secretary of the Department of the Army, for age and gender

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*  Before the court is Defendant's

Motion to Dismiss, which is accompanied by evidentiary submissions and a

supporting brief.  (Docs. # 15, 16.)  Colonel Norris filed a response in opposition

(Doc. # 20), to which Defendant replied (Doc. # 24).  Defendant maintains that the

intra-military immunity doctrine renders Colonel Norris's claims non-justiciable, and

that the court, therefore, lacks subject matter jurisdiction.  Upon careful consideration

of counsel's briefs, the relevant law, and the record as a whole, the court finds that Defendant's motion to dismiss for lack of subject matter jurisdiction is due to be granted.

## I. JURISDICTION AND VENUE

The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both. Subject matter jurisdiction is discussed below.

## II. STANDARD OF REVIEW

Challenges to the justiciability of a claim are properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 (11th Cir. 2003). Such motions take the form of either a "facial" or "factual attack." *Id.* at 924 n.5. Facial challenges to subject matter jurisdiction are based solely on the complaint's allegations, which are taken as true for the purposes of the motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). However, where, as here, the defendant relies on evidence outside the pleadings, no such presumption of truth exists, and the court "may hear conflicting evidence and decide the factual issues that determine jurisdiction." *Gilmore v. Day*, 125 F. Supp. 2d 468, 470–71 (M.D. Ala. 2000) (citing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)), *aff'd*, 273 F.3d 1121 (11th Cir. 2001);

*Lawrence*, 919 F.2d at 1529 ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").   The Eleventh Circuit has cautioned, however, that district courts should only rely on Rule 12(b)(1) where the "facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action."   *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). "The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).

Here, Defendant relies on mostly undisputed extrinsic evidence in challenging subject matter jurisdiction.   The court considers only evidence not subject to dispute.

### III.  BACKGROUND

**A.**      **Structural Overview of Colonel Norris's Employment**

In 1989, Colonel Norris became a full-time member of the Alabama Army National Guard ("ALNG").   From 2001 to 2005, Colonel Norris held the position of Recruiting and Retention Officer for the ALNG.   (Stephenson's Decl. ¶ 2 (Ex. B to Def.'s Mot. to Dismiss).)   As the Recruiting and Retention Officer, Colonel Norris

was a "dual status" technician, which meant that she was a full-time civilian employee who was "required as a condition of that employment to maintain a membership in the [Army] Reserve." 10 U.S.C. § 10216(a). Additionally, dual-status technicians are required to "hold the military grade specified for their authorized positions," "wear the uniforms appropriate for the members' grade and component of the armed forces," and "maintain proper military membership for the position occupied." (Technician Personnel Regulations 303 (Ex. A to Def.'s Mot. to Dismiss)); *see also* 32 U.S.C. § 709(b).

As a dual-status technician, Colonel Norris's first-level supervisor was the Deputy Chief of Staff for Personnel, her second-level supervisor was the Chief of Staff for the ALNG, and her third-level supervisor was the Adjutant General. (Stephenson's Decl. ¶ 3.) In April 2005, Colonel Norris was promoted to the rank of Colonel and a year later, she received a promotion for an Active Duty Special Work position as the Counter-Drug Coordinator for the ALNG. In this position, Colonel Norris was a full-time active duty member of the ALNG and reported directly to Major General Creighton Bowen, the Adjutant General. (Stephenson's Decl. ¶ 5.)

## B.   Colonel Norris Is Removed from Her Counter-Drug Coordinator Position

On June 5, 2006, the Department of the Army Inspector General ("DAIG") received a complaint from the Inspector General of the ALNG, alleging that Colonel

Norris had an improper relationship with General Bowen.[1]  (DAIG Report 1 (Ex. E to Def.'s Mot. to Dismiss).)  On April 13, 2007, the DAIG released a report of its investigation and concluded that there was an improper relationship between Colonel Norris and General Bowen, in violation of army regulations.[2]  The DAIG Report stated that "[t]he evidence indicated that [General] Bowen and [Colonel] Norris established a close personal relationship that negatively affected the chain of [command] and the ALNG," and that "[t]here was evidence of widespread perception within the ALNG that their relationship was improper."  (DAIG Report 2.)

After the DAIG report was issued, General Bowen resigned and Major General Abner C. Blalock became the new Adjutant General.  On September 17, 2007, Colonel Scott F. Gedling, the Deputy Chief of Staff for Operations and Colonel Norris's first-level supervisor, issued a Notice of Intent to separate Colonel Norris for cause from her active-duty position as Counter-Drug Coordinator.  (Ex. H to Def.'s Mot. to Dismiss.)  The Notice stated that the separation was due to the "inappropriate

---

[1] Army Regulation 600-20, Army Command Policy, prohibits relationships between Soldiers of different rank if they "[c]ompromise, or appear to compromise, the integrity of supervisory authority or the chain of command," or if they "[c]ause actual or perceived partiality or unfairness."  (Ex. F to Def.'s Mot. to Dismiss.)  Furthermore, Army Regulation 600-10, Army Leadership, states that all leaders are responsible for "[s]etting and exemplifying the highest professional and ethical standards."  (Ex. G to Def.'s Mot. to Dismiss.)  The DAIG report specifically relied on these regulations.  (DAIG Report 1.)

[2] The DAIG report also stated that Colonel Norris did not seek out preferential treatment from General Bowen and that there was no direct evidence of any sexual relationship between the two.  (DAIG Report 4.)

personal and professional relationship" Colonel Norris had with General Bowen and referenced the DAIG Report's findings.  (Ex. H.)  The Notice further stated that Colonel Norris's "continued retention . . . has an effect on military discipline, good order, and the morale of the unit."  (Ex. H.)  On September 25, 2007, General Blalock, Colonel Norris's third-level supervisor, approved the termination of Colonel Norris from her position as Counter-Drug Coordinator, which became effective on October 2, 2007.  (Ex. H.)

**C.**   **Colonel Norris Is Removed from Her Civilian Technician Position**

After she was terminated as Counter-Drug Coordinator, Colonel Norris resumed her previous technician position.  Colonel Norris's chain of command in both her military and civilian capacities included the Deputy Chief of Staff for Operations (Colonel Gedling), the Chief of Staff (Colonel James C. Suttle), and the Adjutant General (General Blalock).  (Stephenson's Decl. ¶ 6.)  Then, on September 28, 2007, Colonel Norris received a Notice for Proposed Removal, in which Colonel Gedling proposed to remove Colonel Norris from her technician position.  (Ex. I to Def.'s Mot. to Dismiss.)  The Notice stated that the improper relationship with General Bowen was "unbecoming [of] a Military Technician and unacceptable" in the ALNG.  (Ex. I.)  On October 19, 2007, Colonel Norris received notice of Colonel Suttle's decision to accept Colonel Gedling's proposal and to remove her from her full-time technician

position.  Her civilian technician position was terminated on November 5, 2007.  (Ex. J to Def.'s Mot. to Dismiss.)  Colonel Norris appealed this decision, but General Blalock denied her appeal.  (Ex. K to Def.'s Mot. to Dismiss.)  Colonel Norris only lost her  civilian position; she maintained her military position in the ALNG and kept her rank as Colonel.  (Pl.'s Ex. 1 to Doc. # 21, at 7–8.)

**D.**     **Colonel Norris Is Not Removed from the ALNG**

On November 6, 2007, General Blalock submitted a Request for Withdrawal of Federal Recognition to the Federal Recognition Board to determine whether Colonel Norris should be removed from the ALNG based on her improper relationship with General Bowen.  (Ex. L to Def.'s Mot. to Dismiss.)  That same day, General Blalock also issued an administrative reprimand to Colonel Norris for failing to take actions "to resist or stop" her improper relationship with General Bowen "from developing and continuing."  (Ex. O to Def.'s Mot. to Dismiss.)  The Federal Recognition Board found that Colonel Norris's conduct did not rise to the level of conduct unbecoming of an officer and recommended that she retain her federal recognition status.  (Pl.'s Ex. 1, at 9–10.)  Colonel Gedling and Colonel Suttle did not take part in the determination of whether to remove Colonel Norris from the ALNG; they only had authority to rule on the technician side of Colonel Norris's employment.  (Pl.'s Ex. 1, at 12, 14–15, 21.)  The Federal Recognition Board has the final say on

whether to terminate military positions, while the Adjutant General is the final authority on whether to terminate a civilian technician position.  (Pl.'s Ex. 1, at 20.)

## IV.  DISCUSSION

Colonel Norris filed suit under Title VII and the ADEA, which both contain provisions waiving federal sovereign immunity for military departments.  *See* § 2000e-16(a); § 633a(a).  However, in accord with the intra-military immunity doctrine discussed below, the vast majority of circuit courts to interpret these waivers have held that they "apply only to suits by civilian employees of the military departments, and not members of the armed forces."  *Fisher v. Peters*, 249 F.3d 433, 438 (6th Cir. 2001); *see also Stinson v. Hornsby*, 821 F.2d 1537, 1539–40 (11th Cir. 1987) (holding that a member of the National Guard was "military personnel" and could not bring suit under Title VII).  Thus, the justiciability of this case first depends on whether a military technician such as Colonel Norris – one who maintains dual status as a civilian and reservist – may bring suit under Title VII and the ADEA.

## A.    General Principles of the Intra-Military Immunity Doctrine

It has long been established that United States military personnel may not bring actions based on injuries suffered incident to their service in the armed forces.  *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (citing *Feres v. United States*, 340 U.S. 135, 146 (1950)).  This rule – the *Feres* doctrine or the intra-

military immunity doctrine – is "premised on the disruptive nature of judicial second-guessing of military decisions."[3] *Walch*, 533 F.3d at 296 (citing *United States v. Brown*, 348 U.S. 110, 112 (1954)).  In particular, courts must be "[concerned] with the disruption of [t]he peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (alterations in original) (internal quotation marks and citations omitted).

Although *Feres* arose in the context of the Federal Tort Claims Act, it has since been expanded to apply to *Bivens* claims, *see Chappell*, 462 U.S. at 304, § 1983 claims, *see, e.g.*, *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035–36 (5th Cir. 1986), Title VII claims, *see, e.g.*, *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000), and ADEA claims, *see, e.g.*, *Frey v. California*, 982 F.2d 399, 404 (9th Cir. 1993).  However, while the intra-military immunity doctrine bars Title VII and ADEA suits by military personnel, courts outside the Eleventh Circuit are split as to whether a dual-status military technician may, at least in theory, bring suit under Title VII or the ADEA for claims arising out of his or her civilian status.

---

[3] The intra-military immunity doctrine was also developed to appropriately accommodate separation of powers.  "[Judges] are not given the task of running the Army.  The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates." *Chappell*, 462 U.S. at 301 (alterations in original) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953)).

**B.**   <u>**Intra-Military Immunity Doctrine and Dual-Status Military Technicians**</u>

The parties have not argued or cited, and this court has not found, any controlling Eleventh Circuit authority addressing whether a dual-status military technician may bring suit under Title VII or the ADEA for claims arising out of his or her civilian status.  However, there are two main approaches adopted by other circuits to determine whether these employment discrimination claims[4] are non-justiciable under the intra-military immunity doctrine.  The first approach, adopted by the Sixth Circuit, holds that dual-status military technician positions are "irreducibly military in nature" such that their military and civilian aspects cannot be dissected.  *See Fisher*, 249 F.3d at 443–44; *see also Bowers v. Wynne*, 615 F.3d 455, 461 (6th Cir. 2010).  The court is not aware of any other circuit that follows the Sixth Circuit's bright-line rule that an employment discrimination suit by a dual-status technician is "irreducibly military in nature" and, thus, non-justiciable as a matter of law.  By contrast, the vast majority of circuits to address the issue have distinguished suits arising from a technician's status as a member of the military from suits arising from

---

[4] For purposes of this opinion, "employment discrimination claims" refers to claims brought under Title VII or the ADEA, as both statutes contain limited waivers of sovereign immunity that are at issue here.  Furthermore, while most of the cited cases discuss dual-status technician's claims in the context of Title VII, the same reasoning and analysis employed by these courts apply to ADEA claims brought by dual-status technicians.  *See Frey*, 982 F.2d at 404 (comparing the statutory langauge of the ADEA to Title VII to find that the ADEA is not applicable to a member of the state National Guard).

10

his or her status as a civilian federal employee.  This second approach foresees the theoretical possibility that a dual-status technician may pursue employment discrimination claims if the claims arise only from the civilian aspect of his or her job. *See, e.g., Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 95–96 (2d Cir. 2004).

The Ninth Circuit, for example, allows Title VII suits by dual-status technicians for claims that do not challenge conduct "integrally related to the military's unique structure." *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995) (noting that "personnel actions are not always integrally related to the military's unique structure"); *see Zuress v. Donley*, 606 F.3d 1249, 1255 (9th Cir. 2010) (reaffirming *Mier*).  The Second Circuit adopted a slightly modified variation of the Ninth Circuit's approach. In *Overton*, the Second Circuit held that the intra-military immunity doctrine "does not permit" a Title VII claim by a dual-status technician if the claim "(1) challenges conduct integrally related to the military's unique structure or (2) is not purely civilian" in nature.  373 F.3d at 95 (internal citations and quotations omitted).  Along these lines, the Fifth Circuit held that "claims arising purely from [a dual-status technician's] civilian position are provided for under Title VII; claims that originate from [a dual-status technician's] military status, however, are not cognizable . . . ." *Brown*, 227 F.3d at 299; *see also Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir.

2007) ("We agree with our sister courts of appeals and, therefore, we must determine whether [the plaintiff's] discrimination claims arise 'purely from [his dual-status technician] civilian position.'" (quoting *Brown*, 227 F.3d at 299)).

The court finds this second approach persuasive. Title VII and the ADEA "specifically provide[ ] for claims against the government for civilian employees in the military departments." *Brown*, 227 F.3d at 299 n.4; *see* § 2000e-16(a); § 633a(a). Thus, as the Fifth Circuit in *Brown* held, courts must "differentiate the civilian and military positions associated with a dual-status job." *Brown*, 227 F.3d at 299 n.4. Therefore, a dual-status military technician may bring suit under Title VII or the ADEA, but only for claims arising out of his or her status as a civilian.[5]

## C.    **Colonel Norris's Claims**

Colonel Norris challenges the decision by her military and civilian supervisors, Colonel Gedling, Colonel Suttle, and General Blalock, to remove her from her civilian technician position.[6] Colonel Norris argues that because her claims do not arise from

---

[5] However, what exists in theory may not always exist in practicality. In all of the cases cited above that follow an approach similar to that of the Fifth Circuit, none found the dual-status technician's claim to be justiciable.

[6] Colonel Norris abandons all other challenges to decisions made by her superior military officers after the issuance of the DAIG Report. Colonel Norris also specifically abandons her challenge to the decision by General Blalock to refer her to the Federal Recognition Board for dismissal from the Army. (Pl.'s Resp. Br. 8.) *Cf. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding that "grounds alleged in the complaint but not relied upon in [opposition to] summary judgment are deemed abandoned").

the military aspects of her employment, the intra-military immunity doctrine does not bar her employment discrimination claims.  (Pl.'s Resp. Br. 11.)  As evidence that her claim arises from her civilian status, Colonel Norris points to the fact that she was only removed from her civilian technician position, that her military status and rank were not affected, and that she was not on active duty.  (Pl.'s Resp. Br. 13.)  Finally, Colonel Norris argues that she does not "challenge an action involving military officers serving in the same military station in a direct supervisory chain" because Colonel Gedling and Colonel Suttle could only affect her civilian status and not her military status, which was governed by the Federal Recognition Board.  (Pl.'s Resp. Br. 13.)

The facts pointed to by Colonel Norris distinguish her claims from those of *Mier* and *Brown*.  In *Mier* and *Brown*, the plaintiffs challenged decisions directly related to their military rank and/or status.  *See Mier*, 57 F.3d 747 (Title VII claim arising from the plaintiff's failure to receive a military promotion); *Brown*, 227 F.3d 295 (Title VII claim arising from the plaintiff's military discharge).  In so doing, those plaintiffs challenged decisions "central to maintenance of the military's hierarchy." *Mier*, 57 F.3d at 751.  However, while *Mier* and *Brown* are factually distinguishable from the case at bar, the courts' reasoning – and the policy behind that reasoning – is nonetheless informative.

An employment decision can affect the "maintenance of the military's hierarchy" without directly affecting military rank. Here, Colonel Norris challenges a decision made by civilian supervisors who also served as her military supervisors. The Second Circuit, in *Overton*, addressed a similar situation. There, the plaintiff challenged the alleged discriminatory behavior of his supervisor during business hours when both he and his supervisor "were performing what [the plaintiff] assert[ed] were purely civilian duties." 373 F.3d at 95. Recognizing that at the "time the conduct of which [the plaintiff] complain[ed], his status was 'civilian,'" the Second Circuit nonetheless concluded that because the plaintiff's supervisor served the dual role of civilian and military superior, the plaintiff's suit, "if permitted to proceed, would likely affect his military relationship with" his supervisor. *Id.* at 96. This, according to the court, would impermissibly intrude into the affairs of the military. *Id.*

Likewise, here, those who made the decision to remove Colonel Norris from her civilian position served the dual roles of military and civilian supervisors. These supervisors considered Colonel Norris's conduct during her active military duty in making the decision to terminate her civilian employment. As in *Overton*, the court's interference in these decisions would undoubtedly affect Colonel Norris's military relationship with these same supervisors, as Colonel Norris maintained her military status in the ALNG after her civilian position was terminated. *See DiGirogio v. New*

14

*Jersey*, No. 08-2444, 2009 WL 1883913, at *4 (D.N.J. June 29, 2009) (explaining that because the plaintiff's supervisor served as his civilian and military supervisor, "[i]t is impossible to argue that [the] allegedly discriminatory conduct only arose in the course of their civilian relationship"). This would result in an impermissible intrusion into the affairs of the military.

Accordingly, Colonel Norris's attempts to argue that her claims are purely civilian in nature fall short. The decision Colonel Norris challenges does not exist in a distinct civilian realm; instead, the decision to remove Colonel Norris from her civilian position is directly related to Colonel Norris's behavior that occurred in her military realm. Colonel Norris's claims that her "military status and rank were unaffected" do not accurately account for the events that transpired. (Pl.'s Resp. Br. 8.) It is true that Colonel Norris did not lose her rank as Colonel and did not lose her federal recognition. However, Colonel Norris's supervisors terminated her from the active-duty military position of the Counter-Drug Coordinator, issued a formal reprimand, and referred her to the Federal Recognition Board.

Moreover, in their decision to remove Colonel Norris from her civilian technician position, Colonel Gedling, Colonel Suttle, and General Blalock relied on the DAIG Report and its findings that Colonel Norris violated army regulations while she was on active military duty. That the Federal Recognition Board had the final

decision-making authority to remove Colonel Norris from the Army does not necessarily lead to the conclusion that her status – therefore her claim – is strictly civilian.  It is impossible to deconstruct Colonel Norris's dual position in a way that leaves the challenged decisions purely civilian in nature.  Thus, Colonel Norris fails to meet her burden of establishing that her claims are justiciable because they arise from her status as a civilian.

## V.  CONCLUSION

For the foregoing reasons, the court finds that Colonel Norris's Title VII and ADEA claims do not arise from her status as a civilian and, therefore, are not justiciable.  Accordingly, it is ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. # 15) is GRANTED.  A separate judgment will be entered.

DONE this 9th day of March, 2012.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE